IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 06-0328 |
| | ) | |
| TYRONE BERNARD BULLOCK | ) | |

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                                September 11, 2007

        Defendant, Tyrone Bernard Bullock, moves to suppress
physical evidence seized from a hotel room and statements he made
during his arrest on December 12, 2005.  Defendant contends that
his hotel room was unlawfully searched and he was unlawfully
arrested, without a warrant, probable cause, or exigent
circumstances.  Defendant argues, therefore, that any evidence
obtained as a result of the search must be suppressed.  Defendant
has standing to present this motion.  For the following reasons,
defendant's motion to suppress is denied.


I.    FINDINGS OF FACT

        On August 31, 2007, the court held an evidentiary hearing
on defendant's motion.  Corporal Ashton and Trooper Murphy of the
Pennsylvania State Police testified at the hearing.  We find both
to be credible witnesses.  Based on the evidence introduced, we
make the following findings of fact.

Pennsylvania State Police Corporal Joseph Pokorny was shot to death shortly after 2:00 a.m. on December 12, 2005 in the driveway outside the Extended Stay America Suites in Carnegie, Pennsylvania.  When officers responded to the scene, they found Corporal Pokorny's body near his patrol car, with its engine running, driver's side door open, and emergency lights on. Corporal Pokorny's body was lying on top of a man's hooded jacket, not his own.  Inside the jacket was an albuterol inhaler. There was evidence of a struggle at the scene, with Corporal Pokorny's handcuffs, pepper spray, and collapsible baton on the ground.   His service weapon was missing.

An investigation ensued inside and around the Extended Stay hotel, as well as elsewhere in Pittsburgh.  One witness told officers that he saw two people run to the left of the hotel, and one or two people get into a car and drive away after hearing two gunshots.   An employee of the hotel reported that he heard someone pull hard on the front doors.  Officers, assisted by a canine unit, determined that one set of tracks in the snow leading away from the crime scene looped back to the hotel.

Around 5:30 a.m., officers began a routine canvas of every room at the Extended Stay hotel in order to gather evidence and witnesses.  Groups of officers were assigned to question guests on each of the hotel's three floors.  Corporal Ashton and Trooper

2

Murphy canvassed the third floor. They were aware of the facts detailed immediately above at the time they conducted their canvassing. In addition, they learned from a guest in Room 313 that a door slammed around 2:30 or 3:00 in the morning. After visiting several other rooms on the third floor, Trooper Murphy knocked on the door of Room 315 at approximately 6:05 a.m. Defendant answered the door and, after some hesitation, identified himself as Ronald Ron Bullock. Trooper Murphy observed defendant to be extremely nervous and agitated. Trooper Murphy observed that defendant was visibly shaking and his pulse could be seen in his neck. Defendant was having trouble breathing and told the officer that he needed his inhaler. Trooper Murphy believed that defendant was being deceitful. Therefore, Trooper Murphy ended the interview voluntarily, telling defendant that he would come back later, when defendant had calmed down.

After the door was closed to Room 315, Trooper Murphy saw drops of what appeared to be blood on the carpet outside the room.[1]  Trooper Murphy called Corporal Ashton over to the area outside of Room 315, informed her that he was suspicious of the man who answered the door, and showed her the blood. Corporal

---

[1] Later laboratory tests on the carpet confirmed the substance was, in fact, human blood.

Ashton called for back-up.  Once back-up arrived, the officers knocked on the door again.  When defendant opened the door, numerous officers entered the hotel room, with guns drawn.  They handcuffed defendant, for officer safety, and sat him on the bed. Trooper Murphy looked for other occupants in the bathroom.  He had his weapon drawn and was prepared to be fired on.  He found no other people in the room, but saw drugs and drug paraphernalia in plain view on a table.  Trooper Murphy then moved defendant from the bed to a chair and advised him of his <u>Miranda</u> rights. Defendant told Trooper Murphy that there was heroin in a duffle bag on a shelf in the hotel room.

Defendant was arrested for a parole violation and transported to headquarters for processing.  Officers secured the room, and obtained a search warrant.  The subsequent search of Room 315 revealed more drugs and drug paraphernalia.

II.    <u>STATEMENT OF REASONS</u>

The Fourth Amendment to the United States Constitution prohibits the government from conducting "unreasonable searches and seizures" of individuals.  U.S. Const. amend. IV.  The introduction into evidence of materials seized and observations made during an unlawful search is prohibited by the exclusionary rule.  <u>Weeks v. United States</u>, 232 U.S. 383 (1914), overruled on

4

other grounds in <u>Elkins v. United States</u>, 364 U.S. 206 (1960). Additionally, the exclusionary rule prohibits the introduction into evidence of materials and testimony that are the products or indirect results of an illegal search, the so-called "fruit of the poisonous tree" doctrine. <u>Wong Sun v. United States</u>, 371 U.S. 471, 484-85 (1963).

Warrantless searches and seizures of a residence[2] are presumptively unreasonable unless probable cause and exigent circumstances exist to justify the intrusion. <u>United States v. Coles</u>, 437 F.3d 361, 365-66 (3d Cir. 2006). According to defendant, the officers lacked probable cause to enter Room 315 and no exigent circumstances excused the initial warrantless search of the hotel room, making it, his resulting arrest, and the second search unlawful. Because we find that the officers had probable cause and there were exigent circumstances, we deny defendant's motion to suppress.

Based upon the credible evidence presented, we find that Trooper Murphy and Corporal Ashton had probable cause to believe that a crime had been committed and that contraband or accomplices were present when they entered Room 315. Specifically, at the time they entered the room the officers knew

---

[2]     Fourth Amendment protection extends to guests staying in hotel rooms. <u>Coles</u>, 437 F.3d at 355.

5

the following: an inhaler had been found in the abandoned jacket under Corporal Pokorny's body and that defendant indicated that he needed his an inhaler; there was a struggle at the scene of the murder that could have caused injury to an attacker; someone forcibly tugged on the doors to the Extended Stay hotel around the time of the murder; dogs had tracked a set of footprints from the scene of the crime to the hotel; a witness saw two men flee the scene of the crime in the direction of the hotel, that the guest in Room 313 heard a door slam around 2:30 or 3:00 a.m.; Corporal Pokorny's loaded gun was missing; defendant was being deceptive and was in physical distress; and spots of blood were on the carpet outside Room 315. These factors provided probable cause for the officers to enter the room to search for an injured person, victims or accomplices, and evidence of the crime.

These same factors also support our conclusion that exigent circumstances justified the entry. We must objectively look to the totality of the circumstances from the perspective of the police officers at the time of the entry to assess whether exigent circumstances existed. Estate of Smith v. Marasco, 318 F.3d 497, 518 (3d Cir. 2003). Exigent circumstances may include, but are not limited to, hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers and others. Coles, 437 F.3d at 366.

6

Here, it was reasonable for the officers to conclude that evidence could be destroyed, that an injured victim or accomplice could be inside the room, or that the officers or other people inside the hotel were in danger.  Although there was an intense police presence inside, and around the hotel, such that defendant likely could not have left the hotel undetected, it is possible that evidence, such as blood evidence, could have been destroyed inside the hotel room.  In addition, defendant's demeanor, his being connected to the crime scene by an inhaler, the blood on the carpet outside his door, and a gun missing from the scene of the shooting could all lead the officers to reasonably conclude that a person inside the room was in distress, or that the hotel guests and officers, could be in danger.  For all these reasons, the officers' entry into the room was justified by exigent circumstances.

We disagree with defendant that the officers created the exigency themselves by knocking on the door.   Exigent circumstances do not meet Fourth Amendment standards if the government deliberately creates them.  <u>United States v. Acosta</u>, 965 F.2d 1248, 1254 (3d Cir. 1992).  The officers here, however, did not create the possibility of evidence being destroyed or harm to others  in order to obtain entry into the room.   The officers were conducting a lawful and routine sweep of all guests

7

at the hotel to obtain information and locate witnesses to a shooting that occurred outside the hotel. They knocked on the door of Room 315 just as they had knocked on the other doors on the floor. There was nothing improper about Trooper Murphy's initial contact with defendant. After that, defendant's demeanor and statements, combined with the facts gathered thus far in the investigation, created the need for the officers to investigate further.

Nor did the search upon entry exceed that which was necessitated by the exigency. The officers looked for other people when the entered the room. Unfortunately for defendant, while they were looking for other people, the officers saw drugs and drug paraphernalia in plain view on a table in the room. Under the plain view doctrine, officers may seize contraband without a warrant if: (1) they are lawfully in a position from which they view the object; (2) its incriminating character is immediately apparent; and, (3) the officers have a lawful right of access to the object. Minnesota v. Dickerson, 508 U.S. 366, 374-75 (1993). The rationale of the plain view doctrine is that if contraband is left in open view and is observed by an officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and, thus, there has been no "search" within the meaning of the Fourth Amendment.

8

Here, as discussed above, the initial entry into the hotel room was lawful as it was supported by both probable cause and exigent circumstances. There is no dispute that the drugs and related items were sitting out on a table. It was apparent from looking at them that they were illegal items. Therefore, there is no basis on which to suppress the drugs. The possession of these drugs supported the subsequent arrest of defendant. Defendant was advised of his Miranda rights before he made any incriminating statements at the scene of the arrest, and thus, those statements are admissible. All other contraband and evidence was later discovered pursuant to a valid search warrant, and thus, that evidence is also admissible. There is no basis on which to suppress any physical or testimonial evidence.

Therefore, this $\underline{11}$ day of September, 2007, IT IS HEREBY ORDERED that defendant's motion to suppress [document # 26] is DENIED.

BY THE COURT:

cc:   All counsel of record

9